# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>Clarendon Hill Somerville, LP;<br> Linda Hamilton; Jill Ouellette;<br>Donna McCarthy and<br>FHRC Management Corp.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION No.: 1:12-cv-12369-LTS<br>)<br>)<br>)<br>)<br>)<br>) |

## CONSENT ORDER

The United States filed suit against the Defendants, Clarendon Hill Somerville, LP; Linda Hamilton; Jill Ouellette; Donna McCarthy and FHRC Management Corp. (hereinafter "Defendants"), on December 19, 2012 on behalf of Khadija Houmidi, Noureddini Gharouadi and their three minor children, pursuant to § 812(o) of the Fair Housing Act, as amended, 42 U.S.C. § 3612(o). The complaint alleges that the Defendants discriminated against Khadija Houmidi, Noureddini Gharouadi and their three minor children on the basis of familial status in connection with the rental of an apartment at a multi-family subsidized housing development known as Clarendon Hill Towers ("Subject Property"), located at 1372 Broadway in Somerville, Massachusetts, in violation of the Fair Housing Act, 42 U.S.C. § 3604(a). Defendants deny these allegations. The Parties have agreed to the entry of this Consent Order to resolve all claims of the United States and Khadija Houmidi, Noureddini Gharouadi and their three minor children against the Defendants and to avoid further expenses and the uncertainties of litigation. Nothing

in this Consent Order shall constitute or be construed as an admission by any of the defendants that he, she or it has violated 42 U.S.C. § 3604(a) or any other legal requirement. The requirements of this Consent Order shall apply only with respect to the Subject Property unless otherwise specified.

## I. GENERAL INJUNCTION

The Defendants, their officers, agents, employees, and all persons in active concert or participation with them are enjoined, with respect to the rental of any dwellings as defined by 42 U.S.C. §3602(b), from:

A. Refusing to rent, or to negotiate for the rental of, or otherwise making unavailable or denying, a dwelling to any person because of familial status, in violation of 42 U.S.C. § 3604(a); and

B. Imposing, maintaining or enforcing an occupancy policy that is more restrictive than the following, which shall be included in any Tenant Selection Plan ("Plan"):

> "Occupancy is usually based on two people per bedroom unless the square footage allows or requires otherwise. Household size and the number of occupants per bedroom must comply with the current State Sanitary Code Minimum Square Footage Requirements. All determinations on occupancy must comply with applicable Federal regulations or requirements, including those found in Section 3-23 (Occupancy Standards) and specifically Section 3-23 Paragraphs E. 4 and F., and Exhibit 3-2 (Fair Housing Enforcement - Occupancy Standards; Notice of Statement of Policy, 63 Fed. Reg. 70256)) of the HUD Handbook, 4350.3 REV-1."

Section 3-23 E. and F. and Exhibit 3-2 of the HUD Handbook, 4350.3 REV-1 are appended as Attachment C to this Consent Order.

C. The Plan shall further indicate the size of each unit at the Subject Property by square footage, including the size of each bedroom.

- 2 -

## II. **AFFIRMATIVE RELIEF**

A. The Defendants shall continue to post and prominently display in the rental office and in any other office where there is rental activity and/or personal contact with applicants for the rental of dwellings from the defendant, a poster no smaller than 11 inches by 14 inches that indicates that all dwellings are available for rent on a nondiscriminatory basis. The poster(s) shall comply with the requirements set out in 24 C.F.R. Part 110.

B. The Defendants shall continue to include the words "Equal Housing Opportunity" or the fair housing logo in all advertising conducted by the Defendants in newspapers, telephone directories, radio or other media, and on all signs, pamphlets, brochures, and other promotional literature. The words or logo shall be prominently placed and easily legible.

## III. **MANDATORY EDUCATION AND TRAINING**

A. Within 30 days of the date of entry of this Order, the Defendants shall provide a copy of this Order to all their representatives, agents and employees involved in the rental or management of dwellings and secure the signed statement from each agent or employee acknowledging that he or she has received and read the Order. This statement shall be substantially in the form of Attachment A.

B. During the term of this Order, within 30 days after the date he or she commences an agency or employment relationship with the Defendants, each new agent or employee involved in the rental or management of dwellings shall be given a copy of this Order and be required to sign a statement acknowledging that he or she has received and read the Order. This statement shall be substantially in the form of Attachment A.

C. Within 30 days of the date of entry of this Order, the Defendants' representatives,

employees and agents shall undergo training on the provisions of the Fair Housing Act pertaining

to discrimination on the basis of familial status. The training shall be conducted by a qualified

third party, approved in advance by the United States and unconnected to the Defendants or its

employees, agents, or counsel. The Defendants shall provide to the United States, within 30 days

after the training, the name(s), address(es) and telephone number(s) of the trainer(s) and

certification executed by the trainers confirming the attendance of all representatives, employees

and agents of the Defendants.

## IV. <u>COMPENSATION OF AGGRIEVED PERSONS</u>

A. Within fifteen (15) days of the date of entry of this Consent Order, the Defendants

shall pay to Khadija Houmidi and Noureddini Gharouadi, on behalf of Khadija Houmidi,

Noureddini Gharouadi and their three minor children, aggrieved persons within the meaning of

the Fair Housing Act, thirteen thousand dollars ($13,000) in monetary damages and costs,

(hereinafter "settlement amount"). Defendants shall pay said money by sending to the United

States by overnight mail at the below-listed overnight mail address a certified check for $13,000

payable to Khadija Houmidi and Noureddini Gharouadi.

B. No amount shall be paid pursuant to the preceding paragraph before Khadija Houmidi

and  Noureddini Gharouadi have executed a written release on behalf of themselves and their

three minor children (substantially in the form of Attachment B) of all claims, legal or equitable,

that they might have against the Defendants relating to the claims asserted in this lawsuit. Upon

receipt of the check, the United States shall send to the Defendants the executed release.

## V. **RECORD KEEPING AND REPORTING**

A.  Within one hundred twenty (120) days of the date of entry of this Consent Order, and thereafter on the anniversary of the date of entry of this Consent Order, Defendants shall submit to counsel for the United States a compliance report, except that the final report shall be submitted sixty (60) days prior to the expiration of this Consent Order.[1]  The compliance report shall include: (a) information about Defendants' compliance with all requirements of this consent order; (b) copies of any signed statements from agents or employees as required by Paragraph III(A) or (B); (c) copies of any training certifications completed as required by Paragraph III(C); and (d) copies of any advertising for the subject property in newspapers, in telephone directories, on radio, on television, on the internet, or in other media published since the submission of the prior report.

B.  Defendants shall notify counsel for the United States in writing within fifteen (15) days of receipt of any written complaint against Defendants based on familial status discrimination.  If a complaint based on familial status is made orally, the complainant will be advised that a complaint may be submitted in writing.  Defendants shall provide a copy of the

---

[1] All correspondence required to be sent to the United States under the provisions of this Order shall be sent to Chief, Housing and Civil Enforcement Section, U.S. Department of Justice, Attn: DJ # 175-36-318, at the following addresses:

| | |
|---|---|
| Regular U.S. Mail: | 950 Pennsylvania Avenue, N.W. – G Street |
| | Washington, D.C. 20530 |
| Overnight Mail: | 1800 G Street, N.W. |
| | Suite 7043 |
| | Washington, D.C. 20006 |

Unless otherwise agreed between counsel, a copy of the documents (without attachments) also shall be sent via facsimile or email.

written complaint with the notification. The notification shall include the full details of the complaint, including the complainant's name, address, and telephone number. Defendants shall also promptly provide the United States with all non-privileged information it may request concerning any such complaint, and shall inform the United States in writing within fifteen (15) days of the terms of any resolution of such complaint.

C.     Defendants shall preserve all records related to this Consent Order and to the subject property. Such documents include, but are not limited to the following: advertisements; vacancy lists; waiting lists; inquiry logs; applications; leases; tenant files; occupancy statistics for each unit, including the number of adults and children in each unit; and all records relating to actual or threatened evictions. Upon reasonable notice to Defendants, the Defendants shall produce or permit representatives for the United States to inspect and copy any records related to this Consent Order so as to determine compliance with the Consent Order, provided, however, that the United States shall endeavor to minimize any inconvenience to Defendants.

## VI. COURT JURISDICTION, SCOPE AND TERM OF CONSENT ORDER, AND TERMINATION OF LITIGATION HOLD

A. The Parties have consented to the entry of this Order as indicated by the signatures below. The Parties stipulate and the Court finds that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1345 and 42 U.S.C. §3612(o). This Consent Order is effective immediately upon its entry by the Court.

B. The term of this agreement will be three (3) years from the date of entry of this Consent Order. The Court shall retain jurisdiction for the duration of this Consent Order to enforce the terms of the Order, after which time the case shall be dismissed with prejudice. The United States may move the Court to extend the duration of the Order if it determines that the

- 6 -

Defendants have violated one or more terms of the Order or if the interests of justice otherwise require.

C. The parties to this Consent Order shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Order prior to bringing such matters to the Court for resolution. However, in the event of a failure by the Defendants to perform in a timely manner any act required by this Consent Order or should the Defendants act in violation of any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act.

D. Except as otherwise set forth herein, each party to this Consent Order shall bear its own costs and attorney's fees associated with this case.

E. The parties agree that, as of the date of the entry of this Consent Order, litigation is not "reasonably foreseeable" concerning the matters described above. To the extent that either party previously implemented a litigation hold to preserve documents, electronically stored information (ESI), or things related to the matters described above, the party is no longer required to maintain such litigation hold. Nothing in this paragraph relieves either party of any other obligations imposed by this Consent Order.

So ORDERED this 10th day of May 2013.

Leo Sorokin
CHIEF UNITED STATES MAGISTRATE JUDGE

- 7 -

The undersigned hereby apply for and consent to the entry of this Order:

For Plaintiff United States


CARMEN M. ORTIZ
United States Attorney
District of Massachusetts

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division



/s/Jennifer A. Serafyn
JENNIFER A. SERAFYN
Assistant United States Attorney
United States Attorney's Office
District of Massachusetts
1 Courthouse Way
John Joseph Moakley Courthouse
Boston, Massachusetts 02110
(617) 748-3100 (telephone)
(617) 748-3969 (fax)
jennifer.serafyn@usdoj.gov

/s/Pamela O. Barron
STEVEN H. ROSENBAUM
Chief
R. Tamar Hagler
Deputy Chief
Pamela O. Barron
Jennifer E. McAllister
Trial Attorney
United States Department of Justice
Washington, DC 20530
(202) 305-2011 (telephone)
(202) 514-1116 (fax)
Pamela.Barron@usdoj.gov

THE DEFENDANTS Clarendon Hill Somerville, LP; Linda Hamilton; Jill Ouellette; Donna

McCarthy and FHRC Management Corp.,

by their Attorneys:


/s/Marc. D. Rie
Lee H. Kozol
Marc D. Rie
Friedman & Atherton LLP
53 State Street
Boston, MA 02109
Phone: 617-227-5540
Fax: 617-523-1559
MRie@friedmanatherton.com

## ATTACHMENT A

### Employee Acknowledgment Form

I, _____, hereby acknowledge that I have been provided

with a copy of and have read the Consent Order entered by the United States District Court in

United States v. Clarendon Hill Somerville, LP; Linda Hamilton; Jill Ouellette; Donna

McCarthy and FHRC Management Corp., Civil Action No.: 1:12-cv-12369 (D.Mass.).


_____
(Signature)


_____
(Print name)


_____
(Street Address)


_____
(City, State, Zip)


_____
(Date)

## ATTACHMENT B

### Release

In consideration of the Consent Order entered in <u>United States v. Clarendon Hill Somerville, LP; Linda Hamilton; Jill Ouellette; Donna McCarthy and FHRC Management Corp.</u>, Civil Action No.1:1-cv-12369 (D.Mass.), and of the payment of the sum of thirteen thousand dollars ($13,000) pursuant thereto, I, _____, and I, _____ on behalf ourselves and our three minor children, hereby release the Defendants named in this action, and their partners, agents, heirs, successors, assigns, or other affiliated entities, from any and all liability for any claims, legal or equitable, I/we may have against them arising out of the issues alleged in the action as of the date of the entry of the Consent Order. I/we fully acknowledge and agree that this release of the Defendants shall be binding on my/our heirs, representatives, executors, successors, administrators, and assigns. I/we hereby acknowledge that I/we have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.


_____

(Signature)


_____

(Date)


_____

(Signature)


_____

(Date)

**ATTACHMENT C**

    d.    HUD's Equal Opportunity and nondiscrimination requirements under HUD's administrative procedures.

## C.   Timeframe for Applying Occupancy Standards

1.   Owners apply their occupancy standards before assigning the family to a unit. Owners should review family size and occupancy standards prior to completing all of the required verifications so that if the property cannot accommodate the family, the owner may immediately inform the family of its ineligibility.

2.   Owners also compare family composition to occupancy standards when there is a change in family size. This comparison is done to determine whether the family needs to transfer to another unit.

## D.   Prohibition of Occupancy Standards that Exclude Children

1.   The Fair Housing Act prohibits housing providers from discriminating on the basis of familial status, making it illegal to discriminate against families because of the presence of children.

2.   Owners may neither exclude families with children from their properties, nor may they develop policies or procedures that have the purpose or effect of prohibiting children (e.g., policies in tenant selection plan, occupancy standards, house rules).

3.   Owners may not exclude otherwise eligible elderly families with children from elderly properties or elderly/disabled properties covered by this handbook.

## E.   General Occupancy Standards

1.   Owners have discretion in developing occupancy policies that meet the needs of the specific property. HUD does not prescribe specific policies owners must implement but provides guidelines owners must follow when developing written occupancy standards.

2.   HUD's occupancy guidelines are provided in * Exhibit 3-2 *. Generally a two-persons-per-bedroom standard is acceptable. An owner may establish a different standard for assigning unit size based on specific characteristics of the property (e.g., some bedrooms are too small for two persons).

3.   An owner's occupancy standards establish the size of the unit a family will occupy, but owners must avoid making social judgments on a family's sleeping arrangement. For example, it is not for the owner to determine whether an unmarried couple may share the same bedroom or whether a young child can share a bedroom with a parent.

4. Owners may consider the size of the unit, the size of the bedrooms, and the number of bedrooms so long as their policy allows for family preferences (within HUD guidelines) to be considered. As owners develop and implement occupancy standards, they must take into consideration the following factors:

   a. The number of persons in the family;

   b. The *age,* sex and relationship of family members;

   c. The family's need for a larger unit as a reasonable accommodation; and

   d. Balancing the need to avoid overcrowding with the need to avoid underutilization of the space and unnecessary subsidy.

5. If a family, based on the number of members, would qualify for more than one unit size, the owner must allow the family to choose which unit size they prefer.

6. Counting family members. In order to determine the size of unit that would be appropriate for a particular family, the owner needs to determine the number of family members.

   a. The owner must count all full-time members of the family.

   b. The owner must also count all anticipated children. Anticipated children include the following:

      (1) Children expected to be born to a pregnant woman;

      (2) Children in the process of being adopted by an adult family member;

      (3) Children whose custody is being obtained by an adult family member;

      (4) Foster children who will reside in the unit;

      (5) Children who are temporarily in a foster home who will return to the family; and

      (6) Children in joint custody arrangements who are present in the household 50% or more of the time.

   c. The owner may count children who are away at school and who live at home during recesses.

      **NOTE: Owners should not count children who are away at school who have established residency at another address or

location as evidenced by a lease agreement. The new address or location is considered the student's principle place of residence.**

d.   The owner must count live-in aides for purposes of determining appropriate unit size.

e.   The owner may establish reasonable standards for counting family members that are temporarily in a correctional facility. For example, it is reasonable for an owner to count a teenager who will return to the family in six months from a detention center. It is not reasonable to count an adult member who may return to the family in two years following incarceration.

f.   The owner must not count nonfamily members, such as adult children on active military duty, permanently institutionalized family members, or visitors.

g.   The owner must count foster adults living in the unit.

F.   **Assigning a Smaller Unit Than Required**

An owner may assign a family to a smaller unit size than suggested by the owners' occupancy policies if the family requests the smaller unit and if all of the following apply:

1.   The family is eligible for the smaller unit based upon the number of family members, and occupancy of the smaller unit will not cause serious overcrowding;

2.   Assigning a smaller unit results in a lower rent payment for the occupant in a Section 236 or BMIR property; and

3.   The assignment will not conflict with local codes.

G.   **Assigning Units Larger Than Required**

1.   An owner may assign a family to a larger unit than suggested by the owner's occupancy standards if one of the following conditions exists **(see exception for assigning a larger unit to a single person in G.2 below)**:

a.   No eligible family in need of the larger unit is available to move into the unit within 60 days, the property has the proper size unit for the family but it is not currently available, and the family agrees in writing to move at its own expense when a proper size unit becomes available.

b.   A family needs a larger unit as a reasonable accommodation for a family member who is a person with a disability.



Tuesday
December 22, 1998

Part V

# Department of Housing and Urban Development

Fair Housing Enforcement—Occupancy
Standards; Statement of Policy; Notice;
Republication

## DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

[Docket No. FR-4405-N-01]

**Fair Housing Enforcement—Occupancy Standards; Notice of Statement of Policy**

Note: This document, FR Doc. 98-33568, was originally published on December 18, 1998 at 63 FR 70256-70257. It is being republished to reproduce the camera copy of the appendix furnished by the agency.

**AGENCY:** Office of the Assistant Secretary for Fair Housing and Equal Opportunity, HUD.

**ACTION:** Notice of Statement of Policy.

**SUMMARY:** This statement of policy advises the public of the factors that HUD will consider when evaluating a housing provider's occupancy policies to determine whether actions under the provider's policies may constitute discriminatory conduct under the Fair Housing Act on the basis of familial status (the presence of children in a family). Publication of this notice meets the requirements of the Quality Housing and Work Responsibility Act of 1998.

**DATES:** Effective date: December 18, 1998.

**FOR FURTHER INFORMATION CONTACT:** Sara Pratt, Director, Office of Investigations, Office of Fair Housing and Equal Opportunity, Room 5204, 451 Seventh Street, SW, Washington, DC 20410, telephone (202) 708-2290 (not a toll-free number). For hearing- and speech-impaired persons, this telephone number may be accessed via TTY (text telephone) by calling the Federal Information Relay Service at 1-800-877-8339 (toll-free).

**SUPPLEMENTARY INFORMATION:**

### Statutory and Regulatory Background

Section 589 of the Quality Housing and Work Responsibility Act of 1998 (Pub. L. 105-276, 112 Stat. 2461, approved October 21, 1998, "QHWRA") requires HUD to publish a notice in the Federal Register that advises the public of the occupancy standards that HUD uses for enforcement purposes under the Fair Housing Act (42 U.S.C. 3601-3619). Section 589 requires HUD to publish this notice within 60 days of enactment of the QHWRA, and states that the notice will be effective upon publication. Specifically, section 589 states, in relevant part, that:

[T]he specific and unmodified standards provided in the March 20, 1991, Memorandum from the General Counsel of [HUD] to all Regional Counsel shall be the policy of [HUD] with respect to complaints of discrimination under the Fair Housing Act * * * on the basis of familial status which involve an occupancy standard established by a housing provider.

The Fair Housing Act prohibits discrimination in any aspect of the sale, rental, financing or advertising of dwellings on the basis of race, color, religion, national origin, sex or familial status (the presence of children in the family). The Fair Housing Act also provides that nothing in the Act "limits the applicability of any reasonable local, State or Federal restrictions regarding the maximum number of occupants permitted to occupy a dwelling." The Fair Housing Act gave HUD responsibility for implementation and enforcement of the Act's requirements. The Fair Housing Act authorizes HUD to receive complaints alleging discrimination in violation of the Act, to investigate these complaints, and to engage in efforts to resolve informally matters raised in the complaint. In cases where the complaint is not resolved, the Fair Housing Act authorizes HUD to make a determination of whether or not there is reasonable cause to believe that discrimination has occurred. HUD's regulations, implementing the Fair Housing Act (42 U.S.C. 3614) are found in 24 CFR part 100.

In 1991, HUD's General Counsel, Frank Keating, determined that some confusion existed because of the absence of more detailed guidance regarding what occupancy restrictions are reasonable under the Act. To address this confusion, General Counsel Keating issued internal guidance to HUD Regional Counsel on factors that they should consider when examining complaints filed with HUD under the Fair Housing Act, to determine whether or not there is reasonable cause to believe discrimination has occurred.

### This Notice

Through this notice HUD implements section 589 of the QHWRA by adopting as its policy on occupancy standards, for purposes of enforcement actions under the Fair Housing Act, the standards provided in the Memorandum of General Counsel Frank Keating to Regional Counsel dated March 20, 1991, attached as Appendix A.

Authority: 42 U.S.C. 3535(d), 112 Stat. 2461.

Dated: December 14, 1998.

**Eva M. Plaza,**

*Assistant Secretary for Fair Housing and Equal Opportunity.*

BILLING CODE 4210-28-P



**U. S. Department of Housing and Urban Development**
Washington, D.C. 20410-0500

APPENDIX A

March 20, 1991

OFFICE OF GENERAL COUNSEL

MEMORANDUM FOR:  All Regional Counsel

FROM:  Frank Keating, G

SUBJECT:  Fair Housing Enforcement Policy:  Occupancy Cases

On February 21, 1991, I issued a memorandum designed to
facilitate your review of cases involving occupancy policies
under the Fair Housing Act.  The memorandum was based on my
review of a significant number of such cases and was intended to
constitute internal guidance to be used by Regional Counsel in
reviewing cases involving occupancy restrictions.  It was not
intended to create a definitive test for whether a landlord or
manager would be liable in a particular case, nor was it intended
to establish occupancy policies or requirements for any
particular type of housing.

. However, in discussions within the Department, and with the
Department of Justice and the public, it is clear that the
February 21 memorandum has resulted in a significant
misunderstanding of the Department's position on the question
of occupancy policies which would be reasonable under the Fair
Housing Act.  In this respect, many people mistakenly viewed the
February 21 memorandum as indicating that the Department was
establishing an occupancy policy which it would consider
reasonable in any fair housing case, rather than providing
guidance to Regional Counsel on the evaluation of evidence in
familial status cases which involve the use of an occupancy
policy adopted by a housing provider.

For example, there is a HUD Handbook provision regarding
the size of the unit needed for public housing tenants.  See
Handbook 7465.1 REV-2, Public Housing Occupancy Handbook:
Admission, revised section 5-1 (issued February 12, 1991).  While
that Handbook provision states that HUD does not specify the
number of persons who may live in public housing units of various
sizes, it provides guidance about the factors public housing
agencies may consider in establishing reasonable occupancy
policies.  Neither this memorandum nor the memorandum of February
21, 1991 overrides the guidance that Handbook provides about
program requirements.

As you know, assuring Fair Housing for all is one of Secretary Kemp's top priorities. Prompt and vigorous enforcement of all the provisions of the Fair Housing Act, including the protections in the Act for families with children, is a critical responsibility of mine and every person in the Office of General Counsel. I expect Headquarters and Regional Office staff to continue their vigilant efforts to proceed to formal enforcement in all cases in which there is reasonable cause to believe that a discriminatory housing practice under the Act has occurred or is about to occur. This is particularly important in cases where occupancy restrictions are used to exclude families with children or to unreasonably limit the ability of families with children to obtain housing.

In order to assure that the Department's position in the area of occupancy policies is fully understood, I believe that it is imperative to articulate more fully the Department's position on reasonable occupancy policies and to describe the approach that the Department takes in its review of occupancy cases.

Specifically, the Department believes that an occupancy policy of two persons in a bedroom, as a general rule, is reasonable under the Fair Housing Act. The Department of Justice has advised us that this is the general policy it has incorporated in consent decrees and proposed orders, and such a general policy also is consistent with the guidance provided to housing providers in the HUD handbook referenced above. However, the reasonableness of any occupancy policy is rebuttable, and neither the February 21 memorandum nor this memorandum implies that the Department will determine compliance with the Fair Housing Act based solely on the number of people permitted in each bedroom. Indeed, as we stated in the final rule implementing the Fair Housing Amendments Act of 1988, the Department's position is as follows:

> [T]here is nothing in the legislative history which indicates any intent on the part of Congress to provide for the development of a national occupancy code. . . . .

> On the other hand, there is no basis to conclude that Congress intended that an owner or manager of dwellings would be unable to restrict the number of occupants who could reside in a dwelling. Thus, the Department believes that in appropriate circumstances, owners and managers may develop and implement reasonable occupancy requirements based on factors such as the number and size of sleeping areas or bedrooms and the overall size of the dwelling unit. In this regard, it must be noted that, in connection with a complaint alleging discrimination on the basis of familial status, the Department will carefully examine any such

nongovernmental restriction to determine whether it operates unreasonably to limit or exclude families with children.

24 C.F.R. Chapter I, Subchapter A. Appendix I at 566-67 (1990).

Thus, in reviewing occupancy cases, HUD will consider the size and number of bedrooms and other special circumstances. The following principles and hypothetical examples should assist you in determining whether the size of the bedrooms or special circumstances would make an occupancy policy unreasonable.

## Size of bedrooms and unit

Consider two theoretical situations in which a housing provider refused to permit a family of five to rent a two-bedroom dwelling based on a "two people per bedroom" policy. In the first, the complainants are a family of five who applied to rent an apartment with two large bedrooms and spacious living areas. In the second, the complainants are a family of five who applied to rent a mobile home space on which they planned to live in a small two-bedroom mobile home. Depending on the other facts, issuance of a charge might be warranted in the first situation, but not in the second.

The size of the bedrooms also can be a factor suggesting that a determination of no reasonable cause is appropriate. For example, if a mobile home is advertised as a "two-bedroom" home, but one bedroom is extremely small, depending on all the facts, it could be reasonable for the park manager to limit occupancy of the home to two people.

## Age of children

The following hypotheticals involving two housing providers who refused to permit three people to share a bedroom illustrate this principle. In the first, the complainants are two adult parents who applied to rent a one-bedroom apartment with their infant child, and both the bedroom and the apartment were large. In the second, the complainants are a family of two adult parents and one teenager who applied to rent a one-bedroom apartment. Depending on the other facts, issuance of a charge might be warranted in the first hypothetical, but not in the second.

## Configuration of unit

The following imaginary situations illustrate special circumstances involving unit configuration. Two condominium associations each reject a purchase by a family of two adults and three children based on a rule limiting sales to buyers who satisfy a "two people per bedroom" occupancy policy. The first association manages a building in which the family of the five sought to purchase a unit consisting of two bedrooms plus a den or

study. The second manages a building in which the family of five sought to purchase a two-bedroom unit which did not have a study or den. Depending on the other facts, a charge might be warranted in the first situation, but not in the second.

## Other physical limitations of housing

In addition to physical considerations such as the size of each bedroom and the overall size and configuration of the dwelling, the Department will consider limiting factors identified by housing providers, such as the capacity of the septic, sewer, or other building systems.

## State and local law

If a dwelling is governed by State or local governmental occupancy requirements, and the housing provider's occupancy policies reflect those requirements, HUD would consider the governmental requirements as a special circumstance tending to indicate that the housing provider's occupancy policies are reasonable.

## Other relevant factors

Other relevant factors supporting a reasonable cause recommendation based on the conclusion that the occupancy policies are pretextual would include evidence that the housing provider has: (1) made discriminatory statements; (2) adopted discriminatory rules governing the use of common facilities; (3) taken other steps to discourage families with children from living in its housing; or (4) enforced its occupancy policies only against families with children. For example, the fact that a development was previously marketed as an "adults only" development would militate in favor of issuing a charge. This is an especially strong factor if there is other evidence suggesting that the occupancy policies are a pretext for excluding families with children.

An occupancy policy which limits the number of <u>children</u> per unit is less likely to be reasonable than one which limits the number of <u>people</u> per unit.

Special circumstances also may be found where the housing provider limits the total number of dwellings he or she is willing to rent to families with children. For example, assume a landlord owns a building of two-bedroom units, in which a policy of four people per unit is reasonable. If the landlord adopts a four person per unit policy, but refuses to rent to a family of two adults and two children because twenty of the thirty units already are occupied by families with children, a reasonable cause recommendation would be warranted.

If your review of the evidence indicates that these or other special circumstances are present, making application of a "two people per bedroom" policy unreasonably restrictive, you should prepare a reasonable cause determination. The Executive Summary should explain the special circumstances which support your recommendation.

[FR Doc. 98–33568 Filed 12–17–98; 8:45 am]

BILLING CODE BILLING CODE 4210–28–0